UNITED STATES of America, Appellee,

v.

Willie Isaiah DAWKINS, Appellant.

No. 77–1161.

United States Court of Appeals,
Eighth Circuit.

Submitted Aug. 30, 1977.

Decided Sept. 21, 1977.

Earl P. Gray, St. Paul, Minn., on brief, for appellant.

Andrew W. Danielson, U. S. Atty., and Mel I. Dickstein, Asst. U. S. Atty., Minneapolis, Minn., and Neil Lavick, Intern, on brief, for appellee.

Before BRIGHT, ROSS and HENLEY, Circuit Judges.

## PER CURIAM.

Defendant-appellant Willie Isaiah Dawkins was convicted in district court on an indictment in two counts charging him with distributing a total of approximately seven grams of heroin in violation of 21 U.S.C. § 841(a)(1). On appeal, defendant urges as grounds for reversal (1) the trial court's giving of an Allen-type instruction, and (2) alleged prosecutorial misconduct in making certain remarks during closing argument. Defense counsel failed to object to these alleged errors at trial and our review of the record convinces us that neither ground rises to the level of plain error. Accordingly, we affirm.

## I. Remarks of the Prosecutor

Trial of this case commenced on December 27, 1976. The jury returned its verdict of guilty on December 29. At trial the government produced and relied upon the testimony of Agent Timothy Shanley and Mr. Robert Adams, the latter being an acquaintance of defendant Dawkins. Both men testified that on August 16, 1976, and again on August 23, they went to Dawkins' apartment in St. Paul, Minnesota and told the defendant they wanted to buy a quantity of heroin. In each instance the defendant told the two men to wait outside—once in Adams' car and once in a nearby parking lot—where the transactions were completed a few minutes later when the heroin was delivered by a courier for the defendant. Testifying in his own behalf, Dawkins admitted meeting with Shanley and Adams on August 16, but denied having engaged in any drug transaction with them. Dawkins further denied having even seen either Shanley or Adams on August 23.

As a result of this conflicting testimony, disposition of the case obviously turned in large measure on the credibility of the various witnesses. During his closing argument, the prosecutor urged the jury to believe the testimony of Shanley and Adams, and to discredit that of the defendant. Four of these remarks are assailed by defendant as improper attempts by the prosecutor to personally vouch for the credibility of government witnesses.

Though we presently discuss each of the challenged remarks individually, we do so only with full appreciation of our responsibility to view all such statements in the context of the entire trial. *United States v. Chrisco,* 493 F.2d 232, 238 (8th Cir.), *cert. denied,* 419 U.S. 847, 95 S.Ct. 84, 42 L.Ed.2d 77 (1974). In an instance such as this, where the issues were simple and the trial short, we are especially mindful that the role of the prosecutor is a delicate one. *United States v. White,* 486 F.2d 204, 206 (2d Cir. 1973), *cert. denied,* 415 U.S. 980, 94 S.Ct. 1569, 39 L.Ed.2d 876 (1974). "[W]hile he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods

calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935); *see also United States v. Splain*, 545 F.2d 1131, 1134 (8th Cir. 1976). If, on balance, it could be said that the prosecutor had placed his own credibility before the jury, or that he implied that he had knowledge of evidence of guilt not available to the jury, we would not hesitate to condemn his conduct as improper. *See United States v. Splain, supra,* 545 F.2d at 1134–35, 1135 n.2. We are satisfied, however, that when placed in context, the remarks of the prosecutor do not in this case warrant reversal.

■ Respecting three of the four challenged statements, we have little difficulty concluding that the prosecutor did not overreach the bounds of propriety. These comments [1] merely call upon the jury to remember testimony actually given and observed. From this the prosecutor only asked the jurors to consider "for themselves" whether the testimony was incredible. In referring to the motto that "the government wins when justice is done," we find no error. Such recitation adds nothing of substance to the credibility of a witness who in all events has sworn to tell the truth. The prosecutor, by making this remark, did not assert that the jury could infer the defendant's guilt from the fact of his indictment. *Compare United States v. Splain, supra,* 545 F.2d at 1134. Rather, when read in its entirety, the statement does no more than remind the jurors of their duty to be just.

■ The fourth statement presents a more troublesome question. After discussing the testimony offered by the government witnesses, the prosecutor stated:

I don't hesitate for a moment standing by the testimony—the forthright testimony of Agent Shanley and the testimony that rang of truth from an individual, even such as Bob Adams * * *.

Arguably this statement is open to the charge that it expresses the prosecutor's personal opinion concerning the believability of Shanley and Adams. In our opinion, however, the prosecutor's characterization of the witness' testimony as believable in its context refers to the witness' manner of testimony in court before the jury. Such description of testimony does not constitute error for it neither puts the prosecutor's own credibility before the jury nor does it carry any inference of outside knowledge. *United States v. Kuta,* 518 F.2d 947, 955 (7th Cir. 1975).

## II. Allen Instruction

This case was submitted to the jury at 4:45 p. m. on December 28. After deliberating until 5 p. m. the jury retired for the night and returned at 9:30 the next morning. Being unable to reach a unanimous verdict, the jury was recalled at 2:53 p. m., after approximately five hours of deliberation, and given a supplemental Allen-type

---

1. I stand here with no hesitation in asking you to listen to—to recall the testimony of Agent Shanley, to recall the manner in which he testified, and the forthright manner; to look at this background and ask yourself whether there's any conceivable motivation at all for the kind of concoction, without any type—any type of supporting evidence that counsel has suggested.

     \*   \*   \*   \*   \*   \*

The plaque contains a speech by a former Attorney General, and that plaque says, essentially, that the government wins when justice is done. That's a very important saying and a very important motto—one that I'm sure that Agent Shanley follows, as I do, and it's one that—it's one that's very important—that the government wins when justice

is done, not when some individual is entrapped, or some innocent individual is convicted, or brought to answer for charges in which he isn't guilty in a very malicious manner, as counsel has suggested it's occurred, but when justice is done. That's a very important concept, a very important motto, and one that I think you should keep in mind—is [sic] you consider what the evidence is in the case.

     \*   \*   \*   \*   \*   \*

What he [Bob Adams] spoke has been corroborated by the testimony of Agent Shanley, who observed and participated, upon whose testimony you can rely, and I ask you, based upon the evidence that you've heard, to find the Defendant Willie Dawkins guilty of the offenses charged.

instruction.[2] Following an additional forty-five minutes of deliberation the jury returned its verdict of guilty. Defendant now asserts that the giving of the instruction was coercive and prejudicial. We disagree.

■ We note initially that the defendant did not object to the giving of the instruction at trial and does not now contend that the Allen charge is prejudicial *per se*.[3] Indeed, the form of the instruction given in this case was the one recommended by counsel for the defendant. The thrust of defendant's argument is that the trial court improperly ascertained how the jury was divided in its deliberations and that under those circumstances the instruction had a coercive effect on the minority jurors. The record wholly belies this allegation. In his initial questioning of the jury foreman, the trial court asked:

Now, Mr. Foreman, don't tell me how you stand. You know, like five to seven, or however you are, but are you having a little trouble reaching a decision, a unanimous decision?

During the course of the ensuing instructions, the court stated:

Now, here you are faced with a problem of making the decision, and I urge you to go ahead and try again, and those of you who are in the majority, *if there is a majority*, to try and convince those who are in the minority. (Emphasis supplied.)

On this record it is impossible for us to determine, as it would have been for the trial court, whether the ultimate verdict of guilty represented the views of those in the majority or those in the minority at the time the instructions were given, or even whether there was a majority at that point. Under these circumstances, we find no basis for concluding that the instructions had a coercive effect on the jury.[4] Accordingly, we reject defendant's claim that the giving of the Allen charge or the other remarks of the trial court warrant a reversal.

Judgment affirmed.

---

2. The instruction was given in part as follows:

Well, members of the jury, I am going to ask you to try once more, if you will, and in the light of these instructions:

The verdict must be the verdict of each individual juror and not a mere acquiescence in the conclusion of others. You should examine the evidence and the verdict form which has been submitted to you with proper regard and deference for the opinion of your fellow jurors. You should listen to each other's opinions with a disposition to be convinced. It is your duty to decide this case, if you can conscientiously do so. If you fail to agree on a verdict the case is left open and undecided and, like all cases, it must be disposed of at some other time.

3. This court has frequently rejected such contentions. *United States v. Ringland*, 497 F.2d 1250, 1253 (8th Cir. 1974); *Hodges v. United States*, 408 F.2d 543, 552 (8th Cir. 1969). This is particularly true where, as here, no objection was made to the charge in trial court. *United States v. Chrysler*, 533 F.2d 1055, 1057 (8th Cir.), *cert. denied*, 429 U.S. 844, 97 S.Ct. 124, 50 L.Ed.2d 115 (1976).

4. We refuse to draw such an inference, as defendant insists we must, from the simple fact that the jury returned its verdict only forty-five minutes after receiving the supplemental charge. *See United States v. Chrysler*, 533 F.2d 1055, 1057 (8th Cir.), *cert. denied*, 429 U.S. 844, 97 S.Ct. 124, 50 L.Ed.2d 115 (1976) (jury returned verdict 20 minutes after receiving Allen charge); *United States v. Ringland*, 497 F.2d 1250, 1253 (8th Cir. 1974) (verdict returned 30–40 minutes following Allen charge).